UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GLORIA TUCK,

Plaintiff,

v.  Case No.

THOMAS B. MODLY, ACTING SECRETARY,
UNITED STATES DEPARTMENT OF
THE NAVY,

Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, GLORIA TUCK ("Plaintiff"), sues Defendant, THOMAS B. MODLY, ACTING SECRETARY, UNITED STATES DEPARTMENT OF THE NAVY ("Defendant"), and alleges:

### I. JURISDICTION AND PARTIES

1. This is an action for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., brought to remedy discrimination on the basis of sex. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 1343(a)(3) and (4), and Title VII.

2. At all times material to this complaint, Plaintiff has been a resident of Orlando, Florida. Plaintiff is a black female citizen of the United States.

3. Defendant, THOMAS B. MODLY, ACTING SECRETARY, UNITED STATES DEPARTMENT OF THE NAVY ("Defendant"), is an agent of the United States Government who heads an agency headquartered in Washington, D.C. and at all times material to this complaint was Plaintiff's employer.

## II. CONDITIONS PRECEDENT

4. Plaintiff filed timely administrative charges of employment discrimination with the Defendant. Following her initial contact with defendant's EEO counselor on August 23, 2014, Plaintiff was issued a Notice of Right to File a Discrimination Complaint on December 2, 2014. Plaintiff filed a timely formal charge of employment discrimination on the basis of sex and color on December 24, 2014. An investigation was undertaken in response to Plaintiff's timely filed formal complaint. That investigation was concluded and the agency thereafter took final action on Plaintiff's complaint by issuing a Final Agency Decision (FAD) on December 23, 2019. Plaintiff received the FAD on January 3, 2020. This lawsuit was filed within 90 days of Plaintiff's receipt of the FAD, consequently, Plaintiff has exhausted all administrative remedies and this lawsuit was timely filed.

## III. STATEMENT OF FACTS

5. Plaintiff has been employed by Defendant as a Supervisory Logistics Management Specialist in the Orlando, Florida field office since October 24, 2010. From March 2014 through August 2014, Plaintiff was assigned as the Assistant Program Manager for Logistics in the Marine Corps Systems Command (MCSC) Program Management Office (PMO) located in Orlando, Florida. Prior to joining Program Manager Training Systems (PM TRASYS) in Orlando, Plaintiff worked for several Department of the Navy Agencies (OPNAV, NAVAIR, PEO Land Systems) since 1991.

6. Plaintiff's immediate supervisor from March 2014 through August 2014 was Lisa Bristow, Assistant Commander for Acquisition, Logistics and Product Support based in Quantico, Virginia. Daniel Torgler, Supervisory Program Manager, was assigned as Deputy Program Manager and was charged oversight over Program Manager Training Systems (PM

TRASYS) civilian workforce. Assistant Program Managers like Plaintiff supported PM TRASYS and the Deputy Program Manager. Daniel Torgler was delegated responsibility of approving and disapproving leave and travel requests Plaintiff made and providing input to Plaintiff's supervisors. As found by a preliminary inquiry dated September 22, 2014, the staff is largely male and the leadership positions are also predominantly male.

7. During the course of her employment Plaintiff was subjected to sexual harassment and harassment based on her gender. For example, Daniel Torgler made repeated unwanted sexual advances towards Plaintiff.

8. During the week of March 10, 2014, the first incident involving physical contact happened when Plaintiff was in Daniel Torgler's office behind closed doors discussing business. He was looking Plaintiff over in a suggestive manner, which he had previously done on numerous occasions. This time was different. Plaintiff wore stockings that day. He got up from behind his desk, walked over to her, ran his finger across the top of her thigh and said, "nice stockings". He immediately turned away and returned to his chair. Plaintiff was shocked. She decided to quickly finish their discussion and leave the room. The following day Plaintiff confided with a co-worker regarding the incident.

9. During the week of March 10, 2014, Mr. Daniel Torgler swiped his hand across Plaintiff's behind as she was walking by him in the hallway by the front office outside of Conference Room 501. As Plaintiff was walking away from Daniel Torgler he swiped Plaintiff across her behind with his hand. He was trying to smack Plaintiff on her behind. Plaintiff immediately confided with the same co-worker she discussed the previous incident with. Daniel Torgler had previously engaged in similar behavior as indicated by Ms. Susie Rupert, Functional

Lead, Facilities Engineering who alleged Mr. Torgler smacked her on her behind while she was walking down a hallway in 2010 or 2011.

10. During the week of March 17, 2014, Plaintiff traveled to Quantico, Virginia along with Daniel Torgler and other members of the PM TRASYS team. One evening while on travel Daniel Torgler informed Plaintiff that he and other members of the PM TRASYS team who were also in the Quantico area, planned to meet at Firebirds Restaurant in Woodbridge, Virginia. Plaintiff attended dinner and after eating Daniel Torgler, Martin Bushika, Capt. Richardson, Suzanne Rupert and Plaintiff went to the bar area of the restaurant to have drinks. When Plaintiff arrived in the bar area Daniel Torgler had reserved a seat specifically for Plaintiff, which was right next to him. Daniel Torgler thereafter, repeatedly hugged and touched Plaintiff. Mr. Torgler repeatedly touched Plaintiff's leg but moved his hand away fairly quickly each time. Plaintiff felt trapped and uncomfortable. She did not want to make a scene in public in front of her peers. Plaintiff confided in a colleague who lived in the area the following day regarding this incident. Both Capt. Anderson and Suzanne Rupert later corroborated the allegation that Mr. Torgler hugged Plaintiff and touched her leg often in the bar area of the restaurant.

11. On or about April 18, 2014 Daniel Torgler came to Plaintiff's office to discuss an incident. He closed the door upon entering and sat right next to Plaintiff instead of on the other side of her desk where every visitor typically sat. Plaintiff felt he was too close and invading her personal space but she tried to stay focused on the topic he came to discuss. As she was talking, Mr. Torgler's eyes began exploring below her waist. He started moving his hand over to touch Plaintiff's thigh. Plaintiff immediately gave him a stern look reflecting her objection to the conduct and he stopped short of touching her thigh. Plaintiff discussed this incident with a prior colleague and a co-worker who worked across the hall from her office.

12. On August 20, 2014 Daniel Torgler came to Plaintiff's office to discuss an important work related issue with Plaintiff. He first stood on the other side of her desk off to the side by a window. As Mr. Torgler looked at Plaintiff his eyes primarily stayed focused on her chest area. Plaintiff was disgusted and made a point to show that with her facial expression. This look did not deter Mr. Torgler. He came around to Plaintiff's desk and asked her to open an email he had previously copied Plaintiff on and asked her to read it out loud. Unnecessarily, he came around her desk leaned over Plaintiff invading her personal space with his head leaning over her right shoulder. Instead of focusing on the computer screen, his eyes were squarely focused on Plaintiff's breasts. Plaintiff kept her composure and quickly read the email. Once Plaintiff finished reading the email he walked back around to the other side of her desk. Shortly thereafter, he left her office.

13. On August 21, 2014 during a PM TRASYS Tier 0 meeting,. Mr. Torgler did not take action to stop other team members from verbally abusing Plaintiff.

14. On August 22, 2014, during a team meeting, Mr. Torgler did not take action to stop verbal abuse from other team members directed at Plaintiff or a near assault from a team member towards Plaintiff.

15. Plaintiff spoke to Ms. Deborah Young, Deputy Assistant Commander for Human Resources on August 21, 2014, who advised her to both contact Christine Melendez (HR) and reach out to an EEO counselor. On August 22, 2014, she spoke to Deputy Assistant Commander for ALPS Natalie Dunbar, prior to the meeting discussed above. On August 23, 2014, she made her initial contact with an EEO Counselor. Initially Plaintiff was assigned to work at another location and Mr. Torgler was allowed to remain in place. Later, Plaintiff was permitted to return to her office and Mr. Torgler was placed on administrative leave during the course of the Agency

investigation into Plaintiff's allegations. Plaintiff took leave as a result of the sexual and sex based harassment she suffered which was not restored by the Agency.

16. Mr. Torgler had been Deputy Program Manager supervising most of the PM competency, certifying time cards, deciding who traveled, and performing other oversight duties since he began his federal civilian employment in 2001. According to witnesses interviewed during the course of the Agency investigations into Plaintiff's allegations Mr. Torgler clearly conveyed a priority he placed on personal loyalty. Mr. Torgler escaped significant disciplinary action (such as removal from his supervisory position) for assaulting an intern. Mr. Torgler's supervisor at the time of the sexual harassing incidents was a prior subordinate of his and was a personal friend.

17. Mr. Torgler's inappropriate conduct towards female employees was or should have been known to leadership of the Agency. One witness recounted an example where in a high level briefing that a woman succinctly briefed leadership on an impactful subject, Mr. Torgler interjected stating "what do I get?" which to this witness made it appear that his decision was contingent upon something unrelated. For example, Mr. Torgler was reported to have often been unable to avert his eyes from certain female employees during his tenure. Another female reported that Mr. Torgler often starred at her breasts and one time shot her in the breast with a rubber bullet. This type of leering at women was commonplace amongst the male dominated leadership at PM TRASYS. According to one witness, another male manager would stand in the doorway bending all the way out to watch a young female contractor walk to the restroom in full view of others. Mr. Torgler was reported by numerous witnesses to have critiqued and/or commented on the outfits of other women in the organization.

18. The behavior of Daniel Torgler would not have occurred but for the Plaintiff's

sex and gender, and was sufficiently severe or pervasive such that it affected the terms and conditions of Plaintiff's employment. Plaintiff indicated that the behavior was unwelcome and complained about it. Not only did the Defendants fail to take appropriate prompt remedial action regarding the above described harassment and discrimination, but Defendants instead retaliated against her. For example, after Plaintiff contacted the EEO office Mr. Torgler made negative reports regarding her performance to her supervisor. This was later used by Mr. Torgler to claim that his reports preceded Plaintiff's complaints regarding sexual harassment and that her reports were motivated by animus against him for holding her accountable.

19. Defendant's failed to exercise reasonable care to prevent and promptly correct harassing behavior. Defendant shared the details of Plaintiff's complaint with Mr. Torgler prior to his investigative interview. Mr. Torgler was initially not removed from the work place and instead Plaintiff was moved to work in a different facility initially. This caused rumors to swirl within Plaintiff's work place. Therefore, even when Plaintiff was returned and Mr. Torgler was placed on administrative leave the rumors and stigma still existed. When Mr. Torgler was reassigned it was not due to sexual harassment of Plaintiff. Further, Defendant saw fit to praise Mr. Torgler's fidelity and integrity when announcing the transfer to Plaintiff and her peers. Mr. Torgler was also permitted to send an email to staff members regarding his departure. In short, Mr. Torgler's removal and reassignment was handled in a way that was as favorable as possible to Mr. Torgler's reputational and career interests. Mr. Torgler was permitted to access the PM TRASYS building and did so on at least sixty-seven occasions in the year and a half period following the EEO investigation. On more than one occasion Plaintiff witnessed Mr. Torgler unescorted and hanging around PM TRASYS. Although Plaintiff requested information from the head of security about protocols in sexual assault situations she did not receive a response.

# COUNT I

## SEXUAL HARASSMENT IN VIOLATION
## OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

20. Plaintiff hereby restates and realleges each and every factual allegation contained in paragraphs 1 through 19.

21. The sexual harassment of Plaintiff was of a sexual nature and/or based on gender, and would not have occurred but for Plaintiff's sex (female). Although the employers knew or should have known about the harassment, no prompt effective remedial action was taken and the employer instead retaliated against Plaintiff. Defendant failed to exercise reasonable care to prevent sexual harassment by failing to address a work place permeated with unequal conditions for women, particularly assertive women in leadership positions. One employee who believed that women were not treated equally reported her concerns in a command survey. The sexual harassment of Plaintiff included actions that affected tangible aspects of Plaintiff's employment.

22. As a result of the discrimination and harassment described above, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of lost wages, back pay, emotional distress and compensatory damages, equitable relief and attorney's fees and costs, prejudgment interest, and any other such relief that the court deems just and proper.

Respectfully Submitted,

/s/ Archibald J. Thomas, III
Archibald J. Thomas, III
Fla. Bar No. 231657
thomas@job-rights.com
Samuel B. Kanupp
Fla. Bar No. 0067216
samuel@job-rights.com

ARCHIBALD J. THOMAS, III, P.A.
4651 Salisbury Road, Suite 255
Jacksonville, Florida 32256
(904) 674-2222 (T)
(904) 296-2341 (F)
TRIAL ATTORNEYS FOR PLAINTIFF